Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE BARNEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOVA LIFESTYLE, INC., THANH H. LAM, YA MING WONG, JEFFERY CHUANG, and YUEN CHING HO,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff George Barney ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Nova Lifestyle, Inc. ("Nova

Lifestyle" or the ("Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Nova Lifestyle from December 3, 2015 through December 20, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business within this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

– 2 –

**PARTIES**

6.    Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.    Defendant Nova Lifestyle purports to design, manufacture, and sell residential and commercial furniture to middle and upper middle-income consumers worldwide. The Company is incorporated in Nevada and its principal executive offices are located in Commerce, California. The Company's securities are traded on the NASDAQ under the ticker symbol "NVFY."

8.    Defendant Thanh H. Lam ("Lam") served as the Company's interim Chief Executive Officer ("CEO") from October 2016 until April 2017, after which time she became the Company's CEO.

9.    Defendant Ya Ming Wong ("Wong") served as the Company's CEO from June 2011 until October 2016.

10.    Defendant Jeffery Chuang ("Chuang") has served as the Company's Chief Financial Officer ("CFO") since August 2017.

11.    Defendant Yuen Ching Ho ("Ho") served as the Company's CFO from June 2011 until his resignation in August 2017.

12.    Defendants Lam, Wong, Chuang, and Ho are sometimes referred to herein as the "Individual Defendants."

13.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

14.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

17.    On December 3, 2015, the Company issued a press release touting its "strategic alliance agreement with (China) Shanxi Wangqing Senior Care Service, Group," which planned to invest $460 million to build a senior care center in China. According to the Company, "Nova LifeStyle [would] operate as the lead design and manufacturer for all furnishings in the complex." The Company further stated that "[c]onstruction at the property ha[d] already commenced." The press release stated, in relevant part:

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**Nova LifeStyle Signs Exclusive Agreement to Furnish Leading Chinese Senior Care Center**

LOS ANGELES, Dec. 3, 2015 (GLOBE NEWSWIRE) -- Nova LifeStyle, Inc. (NASDAQ:NVFY) ("Nova LifeStyle" or the "Company"), a U.S. based fast-growing, innovative designer, manufacturer and distributor of modern LifeStyle furniture, today announced that the *Company has signed a strategic alliance agreement with (China) Shanxi Wanqing Senior Care Service, Group ("Shanxi Wanqing"), a senior care service, senior care home and hotel development company, to operate as its exclusive supplier for furniture design and manufacturing.*

*Shanxi Wanqing plans to invest a total amount of 3.0 billion RMB (USD $460 Million) to build a major senior care center in Luoyang, Henan province in China, and Nova LifeStyle will operate as the lead designer and manufacturer for all furnishings in the complex.* Shanxi Wanqing is managing the project in conjunction with Luoyang Glass Company Limited ("Luoyang Glass"), a well-regarded, publicly traded state-owned enterprise that listed in both Shanghai and Hong Kong Exchange that manufactures and sells sheet glass in over 80 countries throughout the world.

The center will operate as a modern, state-of-the-art senior care hub in the fifth largest provincial economy of China, comprising of housing, entertainment, and medical facilities spread over 329.5 acres. Construction at the property has already commenced, which consists of individual homes, and the rest of the project will continue throughout 2016. The companies will also collaborate on marketing initiatives, customer service, and product promotion in China in the coming year. Nova LifeStyle is the first American Brand furnishing solution provider to be included on a construction project of this scale in China.

**Management Commentary**

Mr. Jeffrey Wong, CEO of Nova LifeStyle, stated, "We are very pleased to sign an exclusive agreement to partner with Shanxi Wanqing and work with a well-regarded company such as Luoyang Glass, and support their plans for a modernized health care center in China.

Partnerships with well-capitalized companies such as Shanxi Wanqing and Luoyang Glass are critical to increase our exposure in new markets, such as health care, and generate significant long-term revenue opportunities for the Company. With our ability to secure such agreements, we can better align ourselves with the type of large-scale projects that will re-shape modern China in the decades to come."

Ms. Shengming Wu, CEO of Shanxi Wanqing, commented, "We are pleased to partner with Nova LifeStyle, as we believe that both companies share the same vision of providing quality lifestyle solutions for China's elderly. According to the China Research Center on Aging, nearly 15% of the country's population, over 200 million people, are 60 or older and the Chinese government remains at the forefront of modernizing health care options within China. We look forward to collaborating with Nova LifeStyle in the years to come."

(Emphasis added.)

18.    On April 14, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Lam and Ho. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Lam and Ho attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

19.    The 2016 10-K stated the following about the Nova Lifestyle's customers and sales:

**Customers**

Our target end customer is the middle and upper middle-income consumer of residential furniture. In the U.S. and international markets, our sales principally are to furniture distributors and retailers who in turn offer our products under their own brands or under our Diamond Sofa brand. ***Our largest customers in 2016 were Shanxi Wanqing Senior Care Service, Group and Actona Company A/S, a global***

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*furniture distributor, which accounted for 10.8% and 9.7% of our total sales in 2016, respectively.* Our two largest customers in 2015 were Actona Company A/S and Encore Sofa Inc., which in total accounted for 11.8% of our sales in 2015. No other individual customer accounted for greater than 10% of our sales in 2016 or 2015. We plan to increase direct sales to retailers and chain stores worldwide as we continue to diversify our customer base from global furniture distributors.

(Emphasis added.)

20.     On March 29, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Lam and Chuang. The 2017 10-K contained signed SOX certifications by Defendants Lam and Chuang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21.     The 2017 10-K stated the following about the Nova Lifestyle's customers and sales:

**Customers**

Our target end customer is the middle and upper middle-income consumer of residential furniture. In the U.S. and international markets, our sales principally are to furniture distributors and retailers who in turn offer our products under their own brands or under our Diamond Sofa brand. *Our largest customers in 2017 were Merlino Lewis LLP, Shanxi Wanqing Senior Care Service, Group and Home Centre LLC, which accounted for 24.3%, 13.7% and 11.5% of our total sales in 2017, respectively. Our two largest customers in 2016 were Shanxi Wanqing Senior Care Service, Group and Actona Company A/S, a global furniture distributor, which accounted for 10.8% and 9.7% of our total sales in 2016, respectively.* No other individual customer accounted for greater than 10% of our sales in 2017 or 2016. We plan to increase direct sales to retailers and chain stores worldwide as we

– 7 –

continue to diversify our customer base from global furniture distributors.

(Emphasis added.)

22.    The statements referenced in ¶¶17-21 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Nova Lifestyle overstated its purported "strategic alliance" with Shanxi Wanginq to operate as lead designer and manufacturer for all furnishings in Shanxi Wanginq's planned $460 million senior care center in China; (2) Nova Lifestyle inflated its reported sales in 2016 and 2017 with Shanxi Wangqing and Merlino Lewis LLP; and (3) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

23.    On December 21, 2018, Andri Capital issued a report on *Seeking Alpha* stating Nova Lifestyle's revenues in 2016 and 2017 were overstated because the Company booked sales to a dissolved and nonexistent company. The report further stated that Nova Lifestyle's purported strategic alliance with Shanxi Wanqing was meant to deceive investors as Shanxi Wanqing was a sham company. The report stated, in relevant part:

**Summary**

We have found multiple evidence of serious irregularities that suggest Nova LifeStyle has reported fictitious financials since 2011 - inflating sales for the years 2016 and 2017, totalling approximately $50.5 million. And possibly over $100 million when accounting for Actona Company A/S since 2011 and High Fashion Home in 2015.

– 8 –

The Company has done this by booking sales to both a dissolved company (Merlino Lewis LLP) and a nonexistent one (Shanxi Wanqing Senior Care Service, Group) (possibly creating a shell company to deceive investors).

Merlino Lewis LLP was dissolved in 2013, but in 2017 NVFY recorded sales to the company of approximately $25.9 million.

We found no information about Shanxi Wanqing Senior Care Service, Group in the Chinese State Administration registry. Its website is nonexistent and we find the press release issued by Nova LifeStyle on December 3, 2015 hard to believe - asserting doubtful statements by assuming a connection with a publicly-listed, state-owned glass manufacturer (Luoyang Glass) and a known personality in the elderly-care and nursing-home sector. NVFY recorded sales to Shanxi Wanqing Senior Care Service, Group of approximately $10 million in 2016 and $14.6 million in 2017, totalling $24.6 million.

We contacted other customers of Nova LifeStyle to verify their relations with the Company. Of the ones that have responded the following do not seem to recognize doing business with NVFY: Actona Company A/S (possibly accounting for sales of around $55 million since 2011), High Fashion Home (sales around $7 million in 2015). Totalling over $60 million.

Other concerns, such as high levels of accounts receivable, reverse merger listing, a significant shareholder, questionable auditors, and more, raise red flags that further shine a light on the questionable practices of Nova LifeStyle.

We contacted Nova LifeStyle regarding all these irregularities, but did not receive a response. Updates will be published here if NVFY contacts us.

We believe this will result in a delisting and share-price drop to near zero.

We reverse our recommendation to Strong Sell.

– 9 –
CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

\*     \*     \*

**Suspicious Activity: Fictitious/Inflated Sales**

In its 2017 annual report Nova LifeStyle stated:

*"Our largest customers in 2017 were Merlino Lewis LLP, Shanxi Wanqing Senior Care Service, Group and Home Centre LLC, which accounted for 24.3%, 13.7% and 11.5% of our total sales in 2017, respectively. Our two largest customers in 2016 were Shanxi Wanqing Senior Care Service, Group and Actona Company A/S, a global furniture distributor, which accounted for 10.8% and 9.7% of our total sales in 2016, respectively."*

Looking beyond the numbers we discovered the irregularities:

**Merlino Lewis LLP**

This company appears to have been dissolved in 2013 (*Source: The Gazette - UK's official public record of statutory notices.(A simple Google Search for "Merlino Lewis LLP" also quickly reveals the above fact.)*. Therefore, it couldn't possibly have been a customer of Nova LifeStyle in 2017 - four years later after being liquidated and closed down.

This company supposedly accounted for 24.3% of NVFY's total sales in 2017, or approximately $25.9 million (24.3% of $106,494,132 total sales). (Source: Annual report 2017)

We contacted Nova Lifestyle regarding the appearance that Merlino-Lewis LLP was dissolved during periods when Nova Lifestyle claimed sales to them, but did not receive a response.

**Shanxi Wanqing Senior Care Service, Group**

On December 3, 2015 NVFY announced that it had signed a strategic alliance agreement with Shanxi Wanqing Senior Care Service, Group to operate as its exclusive supplier for furniture design and manufacturing.According to the press release:

*"Shanxi Wanqing plans to invest a total amount of 3.0 billion RMB (USD $460 Million) to build a major senior care center in Luoyang,*

– 10 –

*Henan province in China, and Nova LifeStyle will operate as the lead designer and manufacturer for all furnishings in the complex."*

We have performed a search for this company in China with no results, i.e. no company by this name (or a similar one, in English or Chinese) seems to exist. Its supposed website is also not functional (wanqing-group.com). (Source: State Administration for Industry and Commerce of the People's Republic of China)

However, we still found a company by this exact name incorporated in Nevada, USA. But it was registered on August 26, 2016 - nearly one year later after the announcement - and looks like an empty shell company, with the same person (Benedict Lo) serving as president, director, treasurer and secretary, and the business license likely expired on August 31, 2017. (Source)

One must ask, why would a private Chinese-based company, operating senior care centers in China, be incorporated in Nevada, USA? Also, the press release states that "construction at the property has already commenced", so the company must have existed before the announcement was made in 2015. However, the (Nevada-based) company was incorporated in 2016 - a year later, and making no sense at all.

We also looked into the supposed CEO of the company, Ms. Shengming Wu. While it's true that she's involved with nursing homes and various other activities (source), we did not once find any interview or coverage about her mentioning the building of a major senior care center in Luoyang, Henan. She is never quoted as the "CEO of Shanxi Wanqing". Also, she lives in Xi'An which is the capital of Shaanxi (note two *a*'s), so one would expect her company name to rather be a reference to Sh*aa*nxi instead of another neighboring Chinese province called Sh*a*nxi (her living there also goes to show that the Nevada-incorporated company is highly suspicious). Still we were easily able to find information about her other companies, both in coverage about her and in the Chinese registry (e.g. Yangling Hongyang Fruit Industry Technology Development Co., Ltd., or Wu Mama Xing Nong Technology Development Co., Ltd. (source)). Due to the fact that Ms. Shengming Wu is actually involved with senior care the matter

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

becomes a little more complicated and cumbersome, because it
seemingly lends truth to NVFY's announcement.

Seeing how big the senior care center was supposed to be, and knowing
that Ms. Shengming Wu's mission revolves around nursing homes and
elderly care, this should have been her crown jewel - yet nothing is ever
mentioned of this project, not in 2015, 2016 or any year later. We only
found information about her contracting land in the small district of
Yangling, near Xi'An (not in Luoyang, Henan) to build an old-age
apartment there within two to three years for 60 people - hardly a $460
million project (this was published just one month before NVFY's press
release). There was also a video interview earlier this year (2018)
where she at one point says that it is her dream to "build a model nursing
home" (thereby surely implying that she has not been involved with
building anything of such scale as the supposed major senior care center
that was so vividly described in NVFY's press release).

The truth of the matter is that in 2010 Ms. Shengming Wu was actually
approached by an owner of an elderly-care home in Xi'An to become
its *managing director*, not a CEO of a "Senior Care Service Group".
And according to all our sources, and as is generally described below,
this is where she has been ever since. In other words, Ms. Shengming
Wu simply manages a small elderly care home in Xi'An.

*"In 2010, the owner of Yuhua Senior Apartment learned about Wu
Shengming from TV and online, and invited her to manage this old
apartment. At that time, she also operated her own company in
Yangling Agricultural Science City. After being invited, she handed
over the company to others and went to Xi'an alone.*

*[At] Yuhua Senior Apartment in the intersection of Xi'an North Second
Ring Road and Mingguang Road, the reporter saw Wu Shengming, who
is known as "Mu Wu". She is the manager of this elderly apartment.
Wu Shengming does not live in an elderly apartment, but rents a unit in
the neighborhood opposite the apartment. Room, for one person living
alone. "I go to the office at 7:20 every morning and work until 6 or 7
in the evening."*

*"In the past few years, I have been with the old people most of the time,
so I can accumulate more management experience." Wu Shengming*

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*told reporters that the reason why she [took on] the management of this apartment is that she wants to run a nursing home in the future."*(Source, Note: This was published in November, 2015 - right before NVFY's press release - and clearly indicates that she is most certainly not a CEO of a company already building a $460 million nursing home complex in another part of the country.)

And further, in an interview published one year later on December 26, 2016 she is quoted as "the manager of the nursing home". She also states clearly that she has entrusted others to run her own companies while she manages a nursing home of 80 elderly people in Xi'An (Yuhua senior apartment home) and:

*"I am just earning a salary. I still have a distance from a charity nursing home. It is estimated that it will take about three years." She said that the reason why she took over this small-scale nursing home is that she wants to accumulate experience. "I will open my own nursing home in the future."*

*"What I am doing now is mainly grassroots work." This nursing home is very small and the things are fine and complicated. She can only manage with the mentality of learning and spends most of her time in contact with the elderly.*

*"[In large pension apartment centers] the top leaders only need to take care of the overall situation. But for small pension apartments, which plug is broken today, which tap tomorrow? Broken [items], security issues, electricity problems [...], I have to personally help."*

This is obviously a far cry from being the CEO of a multimillion dollar senior-care and hotel-development company that at the time had supposedly already commenced construction of a massive $460 million major care center with housing, entertainment, and medical facilities in Luoyang, Henan while partnering with a large, state-owned entity. And note, the above statement and interview was published one year later after the announcement by Nova LifeStyle. That is, even a year after NVFY announced the project she held the title "manager of a small-scale nursing home" in Xi'An - clearly describing the daily activities of a caretaker in an elderly-care apartment building - and obviously with

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

no mention of any involvement with major developments in Luoyang, Henan, or relations to the state-owned Luoyang Glass.

So, at the time of Nova LifeStyle's press release Ms. Shengming Wu was managing a small apartment home for elderly in Xi'An, while dreaming of running her own nursing home in the future - not being the CEO of a large senior-care and hotel-development company already building a major care center in Luoyang, Henan in cooperation with a giant state-owned enterprise.

In regards to the cooperation with the publicly-traded, state-owned glass manufacturer Luoyang Glass: We read through all the firm's quarterly and annual reports since 2014, and not once was anything mentioned about Shanxi Wanqing or a senior care center project. Multiple searches about any relations between this project and Luoyang Glass further revealed nothing.Considering the supposedly large scale of the project (3 billion RMB or $460 million), it is simply strange that not a single comment can be found about it anywhere outside of the press release by Nova LifeStyle.

All in all, we found no company registered in China by the name "Shanxi Wanqing Senior Care Service, Group", no evidence of any links to Luoyang Glass, and no affiliations with Ms. Shengming Wu (who at the time of the announcement was a managing director of a single elderly home, dreaming of running her own small nursing home in the future in Xi'An - not a CEO of a multimillion dollar senior-care and hotel-development company already constructing a gigantic complex in Luoyang, Henan).

Based on the above, the statement by Nova LifeStyle has no support to be true. A few months before the press release shares of Luoyang Glass shot through the roof - going from 5 CNY in early 2014 to 45 CNY in October, 2015. The life story of Shengming Wu was also quite prominently featured in China. At the very least this Shanxi Wanqing Senior Care Service, Group is a significant irregularity, and in a worst-case scenario at most a complete fabrication or severe distortion of the truth.

Shanxi Wanqing Senior Care Service, Group supposedly accounted for 13.7% of NVFY's total sales in 2017, or approximately $14.6 million

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(13.7% of $106,494,132 total sales), and 10.8% of total sales in 2016, or approximately $10 million (10.8% of $92,648,195 total sales). That's $24.6 million in total for 2016 and 2017. (Source: Annual report 2017)

We contacted Nova Lifestyle regarding Shanxi Wanqing Senior Care Service, Group, but did not receive a response.

24.    On this news, shares of Nova Lifestyle fell $0.31 per share or over 40% to close at $0.46 per share on December 21, 2018.

25.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Nova Lifestyle during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NASDAQ, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

– 17 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

33.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

35.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1  similarly situated in connection with their purchases of the Company's securities

2  during the Class Period.

3        39.    The Company and the Individual Defendants acted with scienter in that

4  they knew that the public documents and statements issued or disseminated in the

5  name of the Company were materially false and misleading; knew that such

6  statements or documents would be issued or disseminated to the investing public;

7  and knowingly and substantially participated, or acquiesced in the issuance or

8  dissemination of such statements or documents as primary violations of the

9  securities laws. These defendants by virtue of their receipt of information reflecting

10 the true facts of the Company, their control over, and/or receipt and/or modification

11 of the Company's allegedly materially misleading statements, and/or their

12 associations with the Company which made them privy to confidential proprietary

13 information concerning the Company, participated in the fraudulent scheme alleged

14 herein.

15        40.    Individual Defendants, who are the senior officers and/or directors of

16 the Company, had actual knowledge of the material omissions and/or the falsity of

17 the material statements set forth above, and intended to deceive Plaintiff and the

18 other members of the Class, or, in the alternative, acted with reckless disregard for

19 the truth when they failed to ascertain and disclose the true facts in the statements

20 made by them or other personnel of the Company to members of the investing

21 public, including Plaintiff and the Class.

22        41.    As a result of the foregoing, the market price of the Company's

23 securities was artificially inflated during the Class Period. In ignorance of the falsity

24 of the Company's and the Individual Defendants' statements, Plaintiff and the other

25 members of the Class relied on the statements described above and/or the integrity

26 of the market price of the Company's securities during the Class Period in

27 purchasing the Company's securities at prices that were artificially inflated as a

28

– 19 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

result of the Company's and the Individual Defendants' false and misleading statements.

42.   Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

43.   As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

44.   By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

45.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.   During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

47.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

correct promptly any public statements issued by the Company which had become materially false or misleading.

48.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

49.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

50.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

– 21 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff hereby demands a trial by jury.


Dated: December 28, 2018                Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: <u>/s/Laurence M. Rosen</u>
                                            Laurence M. Rosen, Esq. (SBN 219683)
                                            355 S. Grand Avenue, Suite 2450
                                            Los Angeles, CA 90071
                                            Telephone: (213) 785-2610
                                            Facsimile: (213) 226-4684
                                            Email: lrosen@rosenlegal.com

                                            *Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS