**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE BARNEY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NOVA LIFESTYLE, INC., THANH H. LAM, YA MING WONG, JEFFERY CHUANG, and YUEN CHING HO, <br><br> Defendants. | Case No. 2:18-cv-10725-AB-AFM <br><br> AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

Lead Plaintiffs Richard Deutner and ITENT EDV Dienstleistungs GmbH and named plaintiff Daniel Miles ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by

– 1 –

Defendants, United States Securities and Exchange Commission ("SEC") filings, Chinese State Administration of Industry and Commerce filings, wire and press releases published by and regarding Nova LifeStyle, Inc. ("Nova LifeStyle" or the "Company"), analysts' reports and advisories about the Company, interviews with relevant third-party witnesses, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased the publicly traded securities of Nova LifeStyle from December 3, 2015 through December 20, 2018, both dates inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Defendant Nova LifeStyle, through its operating subsidiaries, purports to be a designer and marketer of residential and commercial furniture in the United States and in China. The Company operates its mainland China manufacturing operations through its subsidiary Nova Furniture Limited (BVI).

3.      In 2014 and 2015 the Company pursued a growth strategy. It had just been listed on the NASDAQ which caused its share price jump more than $4.00 per share. The Company conducted private placements in both 2014 and 2015 to raise capital. Each private placement was accompanied by an issuance of warrants, which are options to purchase shares at a certain price. The Company told investors that

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

raising additional capital was imperative, otherwise it "may not be able to carry out all or parts of our strategy to maintain our growth and competitiveness."[1]

4.    The Company's Chinese operations were very material and closely monitored by the Company.  In the Company's 2015 Annual Report filed with the SEC, the Company explained that it expected "a significant portion of sales" to come from sales to China, and that it intended to "continue developing the China retail market aggressively."[2]

5.    The Class Period begins on December 21, 2015, when the Company falsely announced that it entered into a "strategic alliance" with (China) Shanxi Wanqing Senior Care Service, Group ("Shanxi").  Pursuant to this agreement, the Company would design and manufacture furniture for a $460 million newly-constructed retirement home. According to the announcement, construction on the facility had already begun.

6.    Throughout the Class Period, the Company also told investors that Shanxi was one of the Company's largest customers and generated approximately $24.6 million in sales for fiscal years 2016 and 2017. The Company asserted that Shanxi accounted for 10.8% of total sales in 2016 and 13.7% of total sales in 2017.

7.    The strategic alliance with Shanxi was a sham. In the People's Republic of China ("PRC"), all businesses must register with the State Administration for Industry and Commerce and receive a business license to engage in any business activity.[3] Even opening a bank account requires a license.[4]

---

[1] *See* Nova LifeStyle's 2015 Annual Report filed March 28, 2016 on Form 10-K.
[2] *Id.*
[3] Regulation of the People's Republic of China on the Administration of Company Registration, Article 3 (last amended in 2016).
[4] "Measures for the Administration of RMB Bank Settlement Accounts" issued in April 2003. (No.5 [2003]), Article 49.

– 3 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiffs' counsel's investigators conducted diligent searches for companies and sources associated with Shanxi but no such records were found. There is no record that Shanxi ever existed in the PRC.

8.      The Company also falsely told investors in its 2017 Annual Report filed with the SEC on Form 10-K on March 29, 2018 that Merlino Lewis LLP was one of the Company's largest customers.

9.      In fact, Merlino Lewis LLP, a former furniture retailer in the United Kingdom ("UK"), was dissolved in 2013. Plaintiffs' counsel's investigators, through an examination of corporate records, verified that Merlino Lewis LLP was originally incorporated in 2008 in the UK and subsequently became insolvent and was then dissolved in November 2013.

10.      The fraud was first disclosed publicly to investors on December 21, 2018, when Andri Capital published a report issuing a "strong sell" recommendation regarding the Company (the "Report"). This marked a dramatic reversal from Andri Capital's recent November 21, 2018 buy recommendation, when it called the Company "significantly undervalued." The Report is attached hereto as Exhibit 1 and incorporated herein.

11.      The crux of the Report was that Nova LifeStyle lied about its supposed largest customers -- Shanxi and Merlino Lewis LLP, because they did not exist or were insolvent:

- Shanxi did not appear to exist. Its website was not functional and the Company was not registered in the PRC, as required by law;
- There was no evidence of the purported massive project involving Shanxi that was supposed to have already commenced at the time the press release;

– 4 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- Interviews with Shengming Wu, listed as the CEO of Shanxi in the press release, revealed that she was actually the director of a small-scale nursing home in Xi'an;
- Merlino Lewis LLP was dissolved in 2013;
- The Company had an unusually high accounts receivable, meaning that it made most of its sales on credit and took over 160 days to collect, consistent with inflated sales.

12.     The report shocked investors, causing Nova LifeStyle's stock price to fall $0.31 per share or over 40% to close at $0.46 per share on December 21, 2018.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

15.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company maintains principal executive offices within this judicial district.

16.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17.     Lead Plaintiff Richard Deutner purchased the Company's securities at artificially inflated prices during the Class Period as set forth in its shareholder

– 5 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

certification incorporated by reference herein (Dkt. No. 11-2), and has been damaged thereby.

18.   Lead Plaintiff ITENT EDV Dienstleistungs GmbH purchased the Company's securities at artificially inflated prices during the Class Period as set forth in its shareholder certification incorporated by reference herein (Dkt. No. 11-2), and has been damaged thereby.

19.   Named Plaintiff Daniel Miles purchased the Company's securities at artificially inflated prices during the Class Period as set forth in its shareholder certification, attached hereto as Exhibit 2, and has been damaged thereby.

20.   Defendant Nova LifeStyle purports to design, manufacture, and sell residential and commercial furniture to middle and upper middle-income consumers worldwide. The Company was founded in 2003, is incorporated in Nevada, and has principal executive offices located in Commerce, California. According to the Company's website, its collection of furniture brands includes Diamond Sofa, Bright Swallow and others, and appeals to middle and upper middle-income consumers.

21.   The Company was taken public through a reverse merger in 2011 with Stevens Resources Inc., an exploration stage company originally intended to be in the business of mineral property exploration. The Company's securities are traded on the NASDAQ under the ticker symbol "NVFY."

22.   Defendant Thanh H. Lam ("Lam") served as the Company's interim Chief Executive Officer ("CEO") from October 2016 until April 2017, after which time she became the Company's CEO.

23.   Defendant Ya Ming Wong ("Wong") served as the Company's CEO from June 2011 until October 2016.

24.   Defendant Jeffery Chuang ("Chuang") has served as the Company's Chief Financial Officer ("CFO") since August 2017.

– 6 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

25.    Defendant Yuen Ching Ho ("Ho") served as the Company's CFO from June 2011 until his resignation in August 2017.

26.    Defendants Lam, Wong, Chuang, and Ho are sometimes referred to herein as the "Individual Defendants."

27.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

28.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

29.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

30.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS OF SECURITIES FRAUD
### Materially False and Misleading Statements

31.    The Class Period begins on December 3, 2015, when the Company issued a press release touting its "strategic alliance agreement with (China) Shanxi Wanqing Senior Care Service, Group," which planned to invest $460 million to build an expensive and expansive senior care center in Luoyang, Hunan, in China. According to the Company, "Nova LifeStyle [would] operate as the lead design and manufacturer for all furnishings in the complex." The Company further stated that "[c]onstruction at the property ha[d] already commenced." The press release stated, in relevant part:

**Nova LifeStyle Signs Exclusive Agreement to Furnish Leading Chinese Senior Care Center**

LOS ANGELES, Dec. 3, 2015 (GLOBE NEWSWIRE) **--** Nova LifeStyle, Inc. (NASDAQ:NVFY) ("Nova LifeStyle" or the "Company")**,** a U.S. based fast-growing, innovative designer, manufacturer and distributor of modern LifeStyle furniture, today announced that the ***Company has signed a strategic alliance agreement with (China) Shanxi Wanqing Senior Care Service, Group ("Shanxi Wanqing"), a senior care service, senior care home and hotel development company, to operate as its exclusive supplier for furniture design and manufacturing.***

***Shanxi Wanqing plans to invest a total amount of 3.0 billion RMB (USD $460 Million) to build a major senior care center in Luoyang, Henan province in China, and Nova LifeStyle will operate as the lead designer and manufacturer for all furnishings in the complex.*** Shanxi Wanqing is managing the project in conjunction with Luoyang Glass Company Limited ("Luoyang Glass"), a well-regarded, publicly traded state-owned enterprise that listed in both Shanghai and Hong Kong

– 8 –

Exchange that manufactures and sells sheet glass in over 80 countries throughout the world.

The center will operate as a modern, state-of-the-art senior care hub in the fifth largest provincial economy of China, comprising of housing, entertainment, and medical facilities spread over 329.5 acres. Construction at the property has already commenced, which consists of individual homes, and the rest of the project will continue throughout 2016. The companies will also collaborate on marketing initiatives, customer service, and product promotion in China in the coming year. ***Nova LifeStyle is the first American Brand furnishing solution provider to be included on a construction project of this scale in China***.

**Management Commentary**

Mr. Jeffrey Wong, CEO of Nova LifeStyle, stated, "We are very pleased to sign an exclusive agreement to partner with Shanxi Wanqing and work with a well-regarded company such as Luoyang Glass, and support their plans for a modernized health care center in China. Partnerships with well-capitalized companies such as Shanxi Wanqing and Luoyang Glass are critical to increase our exposure in new markets, such as health care, and generate significant long-term revenue opportunities for the Company. With our ability to secure such agreements, we can better align ourselves with the type of large-scale projects that will re-shape modern China in the decades to come."

Ms. Shengming Wu, CEO of Shanxi Wanqing, commented, "We are pleased to partner with Nova LifeStyle, as we believe that both companies share the same vision of providing quality lifestyle solutions for China's elderly. According to the China Research Center on Aging, nearly 15% of the country's population, over 200 million people, are 60 or older and the Chinese government remains at the forefront of modernizing health care options within China. We look forward to collaborating with Nova LifeStyle in the years to come."

(Emphasis added.)

– 9 –
AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

32.     An investor presentation dated December 2016 that touted the Company's "Milestones and Key Events: 2014 – Present" included the purported agreement with Shanxi:



33.     The December 3, 2015 and December 2016 statements were materially false and/or misleading because Shanxi was a nonexistent sham company not registered to do business in China.

34.     On April 14, 2017, the Company filed a Form 10-K for the fiscal year ended December 31, 2016 (the "2016 10-K") with the SEC, which provided the Company's annual financial results and position. The 2016 10-K was signed by Defendants Lam and Ho. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Lam and Ho attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

35.    The 2016 10-K declared that Shanxi accounted for 10.8% of the Company's sales, or approximately $10 million, and stated the following about the Nova LifeStyle's customers and sales:

**Customers**

Our target end customer is the middle and upper middle-income consumer of residential furniture. In the U.S. and international markets, our sales principally are to furniture distributors and retailers who in turn offer our products under their own brands or under our Diamond Sofa brand. ***Our largest customers in 2016 were Shanxi Wanqing Senior Care Service, Group and Actona Company A/S, a global furniture distributor, which accounted for 10.8% and 9.7% of our total sales in 2016, respectively.*** Our two largest customers in 2015 were Actona Company A/S and Encore Sofa Inc., which in total accounted for 11.8% of our sales in 2015. No other individual customer accounted for greater than 10% of our sales in 2016 or 2015. We plan to increase direct sales to retailers and chain stores worldwide as we continue to diversify our customer base from global furniture distributors.

(Emphasis added.)

36.    The April 14, 2017 statements were materially false and/or misleading because Shanxi was a nonexistent sham company not registered to do business in China.

37.    On March 29, 2018, the Company filed a Form 10-K for the fiscal year ended December 31, 2017 (the "2017 10-K") with the SEC, which provided the Company's annual financial results and position. The 2017 10-K was signed by Defendants Lam and Chuang. The 2017 10-K contained signed SOX certifications by Defendants Lam and Chuang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

38.     The 2017 10-K declared that Merlino Lewis LLP accounted 24.3% of the Company's 2017 sales, or approximately $25.9 million, and Shanxi accounted for 13.7% of the Company's sales, or approximately $14.6 million.   It stated following about the Nova LifeStyle's customers and sales:

**Customers**

Our target end customer is the middle and upper middle-income consumer of residential furniture. In the U.S. and international markets, our sales principally are to furniture distributors and retailers who in turn offer our products under their own brands or under our Diamond Sofa brand. ***Our largest customers in 2017 were Merlino Lewis LLP, Shanxi Wanqing Senior Care Service, Group and Home Centre LLC, which accounted for 24.3%, 13.7% and 11.5% of our total sales in 2017, respectively. Our two largest customers in 2016 were Shanxi Wanqing Senior Care Service, Group and Actona Company A/S, a global furniture distributor, which accounted for 10.8% and 9.7% of our total sales in 2016, respectively.*** No other individual customer accounted for greater than 10% of our sales in 2017 or 2016. We plan to increase direct sales to retailers and chain stores worldwide as we continue to diversify our customer base from global furniture distributors.

(Emphasis added.)

39.     The March 29, 2018 statements were materially false and/or misleading because: (1) Shanxi was a nonexistent sham company not registered to do business in China; and (2) Merlino Lewis LLP became insolvent and was liquidated in 2013.

## The Truth Emerges

40.     On December 21, 2018, Andri Capital issued a report on *Seeking Alpha* that alleged Nova LifeStyle's revenues in 2016 and 2017 were overstated because the Company booked sales to dissolved and nonexistent companies. The Report further explained that Nova LifeStyle's purported strategic alliance with Shanxi was

– 12 –

meant to deceive investors as Shanxi was a sham company. Andri Capital reversed its prior buy recommendation to a "Strong Sell." The Report stated, in relevant part:

**Summary**

We have found multiple evidence of serious irregularities that suggest Nova LifeStyle has reported fictitious financials since 2011 - inflating sales for the years 2016 and 2017, totalling approximately $50.5 million. And possibly over $100 million when accounting for Actona Company A/S since 2011 and High Fashion Home in 2015.

The Company has done this by booking sales to both a dissolved company (Merlino Lewis LLP) and a nonexistent one (Shanxi Wanqing Senior Care Service, Group) (possibly creating a shell company to deceive investors).

Merlino Lewis LLP was dissolved in 2013, but in 2017 NVFY recorded sales to the company of approximately $25.9 million.

We found no information about Shanxi Wanqing Senior Care Service, Group in the Chinese State Administration registry. Its website is nonexistent and we find the press release issued by Nova LifeStyle on December 3, 2015 hard to believe - asserting doubtful statements by assuming a connection with a publicly-listed, state-owned glass manufacturer (Luoyang Glass) and a known personality in the elderly-care and nursing-home sector. NVFY recorded sales to Shanxi Wanqing Senior Care Service, Group of approximately $10 million in 2016 and $14.6 million in 2017, totalling $24.6 million.

We contacted other customers of Nova LifeStyle to verify their relations with the Company. Of the ones that have responded the following do not seem to recognize doing business with NVFY: Actona Company A/S (possibly accounting for sales of around $55 million since 2011), High Fashion Home (sales around $7 million in 2015). Totalling over $60 million.

Other concerns, such as high levels of accounts receivable, reverse merger listing, a significant shareholder, questionable auditors, and more, raise red flags that further shine a light on the questionable practices of Nova LifeStyle.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

We contacted Nova LifeStyle regarding all these irregularities, but did not receive a response. Updates will be published here if NVFY contacts us.

We believe this will result in a delisting and share-price drop to near zero.

We reverse our recommendation to Strong Sell.

41.    The Report explained that Nova LifeStyle entered into fictitious and/or inflated sales with Merlino Lewis LLP and Shanxi. According to public records, Merlino Lewis LLP was dissolved in 2013. The Report stated, in pertinent part:

**Suspicious Activity: Fictitious/Inflated Sales**

In its 2017 annual report Nova LifeStyle stated:

*"Our largest customers in 2017 were Merlino Lewis LLP, Shanxi Wanqing Senior Care Service, Group and Home Centre LLC, which accounted for 24.3%, 13.7% and 11.5% of our total sales in 2017, respectively. Our two largest customers in 2016 were Shanxi Wanqing Senior Care Service, Group and Actona Company A/S, a global furniture distributor, which accounted for 10.8% and 9.7% of our total sales in 2016, respectively."*

Looking beyond the numbers we discovered the irregularities:

**Merlino Lewis LLP**

This company appears to have been dissolved in 2013 (*Source: The Gazette - UK's official public record of statutory notices.(A simple Google Search for "Merlino Lewis LLP" also quickly reveals the above fact.)*. Therefore, it couldn't possibly have been a customer of Nova LifeStyle in 2017 - four years later after being liquidated and closed down.

This company supposedly accounted for 24.3% of NVFY's total sales in 2017, or approximately $25.9 million (24.3% of $106,494,132 total sales). (Source: Annual report 2017)

– 14 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

We contacted Nova Lifestyle regarding the appearance that Merlino-Lewis LLP was dissolved during periods when Nova Lifestyle claimed sales to them, but did not receive a response.

42.     The Report detailed the results of an investigation into Shanxi, the purported strategic alliance, and the purported sales. Notably, no record of Shanxi exists in China. Furthermore, there was no mention of the senior care center project in the quarterly and annual financial reports of the publicly-traded Luoyong Glass, another company supposedly involved with the project. The Report stated, in relevant part:

**Shanxi Wanqing Senior Care Service, Group**

On December 3, 2015 NVFY announced that it had signed a strategic alliance agreement with Shanxi Wanqing Senior Care Service, Group to operate as its exclusive supplier for furniture design and manufacturing. According to the press release:

*"Shanxi Wanqing plans to invest a total amount of 3.0 billion RMB (USD $460 Million) to build a major senior care center in Luoyang, Henan province in China, and Nova LifeStyle will operate as the lead designer and manufacturer for all furnishings in the complex."*

We have performed a search for this company in China with no results, i.e. no company by this name (or a similar one, in English or Chinese) seems to exist. Its supposed website is also not functional (wanqing-group.com). (Source: State Administration for Industry and Commerce of the People's Republic of China)

However, we still found a company by this exact name incorporated in Nevada, USA. But it was registered on August 26, 2016 - nearly one year later after the announcement - and looks like an empty shell company, with the same person (Benedict Lo) serving as president, director, treasurer and secretary, and the business license likely expired on August 31, 2017. (Source)

One must ask, why would a private Chinese-based company, operating senior care centers in China, be incorporated in Nevada, USA? Also,

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the press release states that "construction at the property has already commenced", so the company must have existed before the announcement was made in 2015. However, the (Nevada-based) company was incorporated in 2016 - a year later, and making no sense at all.

\*       \*       \*

In regards to the cooperation with the publicly-traded, state-owned glass manufacturer Luoyang Glass: We read through all the firm's quarterly and annual reports since 2014, and not once was anything mentioned about Shanxi Wanqing or a senior care center project. Multiple searches about any relations between this project and Luoyang Glass further revealed nothing. Considering the supposedly large scale of the project (3 billion RMB or $460 million), it is simply strange that not a single comment can be found about it anywhere outside of the press release by Nova LifeStyle.

All in all, we found no company registered in China by the name "Shanxi Wanqing Senior Care Service, Group", no evidence of any links to Luoyang Glass, and no affiliations with Ms. Shengming Wu (who at the time of the announcement was a managing director of a single elderly home, dreaming of running her own small nursing home in the future in Xi'An - not a CEO of a multimillion dollar senior-care and hotel-development company already constructing a gigantic complex in Luoyang, Henan).

Based on the above, the statement by Nova LifeStyle has no support to be true. A few months before the press release shares of Luoyang Glass shot through the roof - going from 5 CNY in early 2014 to 45 CNY in October, 2015. The life story of Shengming Wu was also quite prominently featured in China. At the very least this Shanxi Wanqing Senior Care Service, Group is a significant irregularity, and in a worst-case scenario at most a complete fabrication or severe distortion of the truth.

Shanxi Wanqing Senior Care Service, Group supposedly accounted for 13.7% of NVFY's total sales in 2017, or approximately $14.6 million (13.7% of $106,494,132 total sales), and 10.8% of total sales in 2016,

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

or approximately $10 million (10.8% of $92,648,195 total sales). That's $24.6 million in total for 2016 and 2017. (Source: Annual report 2017)

43.    The author of the Report also found that the supposed CEO of Shanxi, Ms. Shengming Wu, was, in fact, a manager of a small apartment home for the elderly in Xi'An, not the CEO of a multimillion-dollar company.

44.    The Report also explained that the Company's inflated accounts receivable was consistent with fictitious or inflated sales, stating, in pertinent part:

> [T]he Company has made most of its sales on credit while taking over 160 days to collect outstanding sales (source).   This has led the receivables account to balloon to approximately 67% of assets in 2017 (source). High level of accounts receivable is generally a cause for cash-flow concerns but it can also be an indication of fictitious or inflated sales.
>
> To continue reporting fictitious or inflated sales (and receivables) and likely avoid investor scrutiny a company must either continue to grow its revenue or find alternative ways to justify a large account; e.g. by adjusting or manipulating other accounts (perhaps growing inventories, fixed assets, or increasing advances to suppliers, as we saw NVFY do in Q3 2018), increase bad debts allowance, or vary the sales levels (e.g. drive sales fluctuations replaced the next one with new sales, thereby deceiving and drawing attention away from the receivable account) - all to avoid "cashing in" the fictitious receivables.

45.    On this news, shares of Nova LifeStyle fell $0.31 per share or over 40% to close at $0.46 per share on December 21, 2018.

46.    Flatly, to conduct any business in China, a company must be registered with the SAIC[5] and possess a business license. Plaintiffs' counsel's investigators

_____

[5] The SAIC (State Administration for Industry and Commerce) is the Chinese government body that regulates industry and commerce in China. It is primarily responsible for business registration, business licenses issuing and renewing, and

– 17 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

confirmed that Shanxi was never registered and therefore never possessed a business license. Hence, legally, Shanxi never operated in the PRC. Consistent with this, after a diligent search, investigators were unable to find any companies or sources linked with Shanxi.

47.     Plaintiffs' counsel's investigators confirmed via a search of corporate records that Merlino Lewis LLP, previously a UK furniture retailer with principal offices at Unit 3 Ardath Road, Kings Norton, Birmingham, B38 9PL, became insolvent and was liquidated in November 2013. It remains so to this day. The insolvency report stated that the company had no estimated assets and that there would be no return for creditors. A copy of the insolvency report is attached hereto as Exhibit 3.

48.     Former Employee 1 was a formerly employed by the Company's Chinese subsidiary, Nova Dongguan, from November 2014 until April 2016. She worked as a Production Material Control controller, meaning she was responsible for coordinating the progress of raw materials and production in Nova Dongguan. She also prepared a material requisition plan and ensured material quality. She had no knowledge of the Shanxi project.

49.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**Additional Allegations Demonstrating Scienter and Falsity**

---

acts as the government supervisor of corporations. All Chinese companies are required to file financial statements with the Chinese government annually or bi-annually.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

50. That Nova LifeStyle became public through reverse merger on June 30, 2011—avoiding the scrutiny of underwritten public offering—supports a strong inference of scienter.

51. Notorious fraudster Benjamin Wey's involvement as an undisclosed control person of Nova LifeStyle supports a strong inference of scienter. According to an affidavit submitted in support of a search warrant by Matthew Komar, a special agent with the Federal Bureau of Investigation ("Komar Affidavit", attached hereto as Exhibit 4), Benjamin Wey spearheaded the Company's reverse merger.[6] He used nominees, including his sister, Tianyi Wei, to hold large blocks of Nova LifeStyle to conceal his beneficial ownership of the company.[7] According to records provided by Nova LifeStyle's transfer agent, Interwest Stock Transfer, Nova LifeStyle issued approximately 675,000 shares in late 2011 to entities controlled by Benjamin Wey's sister.[8] Then, Wey attempted to reach out to investment banks to solicit purchases of Nova LifeStyle in a secondary offering.[9]

52. Benjamin Wey's modus operandi was to secretly control chunks of shares of companies for which he engineered reverse mergers, inflate the stock prices, then sell the shares at artificially high levels.[10] He has damaged several companies via his scheme, including SmartHeat, Inc., Deer Consumer Products, and CleanTech Innovations, Inc.[11]

---

[6] Komar Affidavit, at 85
[7] *Id.*
[8] *Id.*
[9] Komar Affidavit, ¶
[10] *Id.* at 88.
[11] *Id.* at 9, 10.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

53.   On June 22, 2017, Defendant Ho sold 4,156,403 shares of common stock at artificially inflated prices for proceeds of $5,860,528.  These sales were unusual as he had never sold stock before.

54.   On December 30, 2016, the Company filed a Form SC 13D/A with the SEC. According to the filing, Defendant Wong sold 4,973,903 shares of common stock at $2.11 per share. Defendant Wong sold the stock at artificially inflated prices.  These sales were unusual as he had never sold stock before.

55.   On November 28, 2016, Defendant Lam sold 50,000 shares of common stock at $2.95 per share. Defendant Lam sold the stock at artificially inflated prices.  These sales were unusual as she had never sold stock before.

56.   The Company's high turnover of auditors supports a strong inference of scienter. Since 2011, the Company has had three independent auditors. Additionally, the Company's current auditor, DCAW (CPA) Limited ("DCAW") (now known as Centurion ZD), is questionable at best. DCAW was formed in April 2016, the result of a merger between AWC (CPA) Limited, formerly known as Albert Wong & Company, and Dominic K.F. Chan & Co.  Albert Wong is banned from being an associated person of a registered public accounting firm, and AWC (CPA) Limited had its Public Company Accounting Oversight Board registration revoked on May 19, 2016.[12] Furthermore, in November 2017, there was a disciplinary case involving Centurion ZD by the Hong Kong Institute of Certified Public Accountants.[13]

---

[12] *See* https://pcaobus.org/News/Releases/Pages/PCAOB-sanctions-hong-kong-audit-firm-new-york-affiliate-four-individuals.aspx
[13] *See* https://www.hkicpa.org.hk/-/media/HKICPA-Website/HKICPA/section6_standards/compliance/disciplinary/2017/11/C-16-1163O_-Eng-press-release_final.pdf

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Nova LifeStyle during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

– 21 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

– 22 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

63.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NASDAQ, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiffs and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

64.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972),

– 23 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

66.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

67.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

68.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

70.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public;

– 24 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

71.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiffs and the Class.

72.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiffs and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

73.     Had Plaintiffs and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

74.    As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

75.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

76.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

78.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

79.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual

– 26 –

Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

80.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

81.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

   D.   Awarding such other and further relief as this Court may deem just and

2

proper.

3

### **DEMAND FOR TRIAL BY JURY**

4

   Plaintiffs hereby demand a trial by jury.

5

6

Dated: June 18, 2019                    Respectfully submitted,

7

                                        **THE ROSEN LAW FIRM, P.A.**

8

9

                                        By: /s/Laurence M. Rosen
10
                                        Laurence M. Rosen, Esq. (SBN 219683)
11
                                        355 S. Grand Avenue, Suite 2450
                                        Los Angeles, CA 90071
12
                                        Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
13
                                        Email: lrosen@rosenlegal.com
14

15                                      *Lead Counsel for Lead Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

– 28 –

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On June 18, 2019, I electronically filed the following **AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 18, 2019.

/s/ Laurence Rosen
Laurence M. Rosen

AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS