'O'

# United States District Court
## Central District of California
### Western Division

| | |
|---|---|
| GEORGE BARNEY, *et al.*, | CV 18-10725 TJH (AFMx) |
| Plaintiffs, | |
| v. | Order |
| NOVA LIFESTYLE, INC., *et al.*, | |
| Defendants. | |

The Court has considered the unopposed motion for conditional class certification and preliminary approval of class action settlement filed by purported Named Plaintiff Daniel Miles and Lead Plaintiffs ITENT EDV Dienstleistungs GmbH ["ITENT"] and Richard Deutner, together with the moving papers.

On December 28, 2018, Plaintiff George Barney, a shareholder of Defendant Nova Lifestyle, Inc. ["Nova"], filed this putative class action against Nova and some of its current and former officers – Thanh H. Lam, Ya Ming Wong, Jeffrey Chuang, and Yuen Ching Ho [collectively "the Nova Defendants"] – on behalf of himself and others who purchased Nova shares between December 2, 2015, and December 20, 2018. This case was originally assigned to Judge André Birotte, Jr.

Nova is a Nevada corporation, with executive offices in California, that designs,

manufactures, and sells furniture.  Barney alleged that Nova made false and misleading statements that resulted in the artificial inflation of its stock price.  Allegedly, after an internet article published on December 21, 2018, revealed the false and misleading statements, Nova's stock fell from $0.77 to $0.46 per share.

On March 27, 2019, Judge Birotte appointed ITENT and Deutner, Intent's managing director, as lead plaintiffs, pursuant to the Private Securities Litigation Reform Act ["PSLRA"], 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), because they had the largest financial interest in the potential relief sought.  ITENT owned 36,000 Nova shares and Deutner owned 17,000 Nova shares.  Judge Birotte, further, appointed the Rosen Law Firm, P.A. ["Rosen Law"] as lead counsel for the putative class at the request of the lead plaintiffs.

On June 18, 2019, Deutner and ITENT filed a First Amended Complaint ["FAC"], which alleged two claims: (1) Violation of § 10(b) of the Securities Exchange Act of 1934 ["the Exchange Act"], 15 U.S.C. § 78j(b), and the Securities and Exchange Commission's ["SEC"] Rule 10b-5, 17 CFR § 240.10b-5, against Nova and the Nova Defendants; and (2) Violation of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Nova Defendants.

For unknown reasons, the FAC listed Miles – in place of Barney – as the only named plaintiff.  Because no request for substitution was made, leave to substitute the named plaintiff was never granted.  In their August 2, 2019, motion to dismiss the FAC, the Nova Defendants stated that "Barney [had] disappeared as a plaintiff without explanation (or even mention)[.]"  Deutner and ITENT did not address the substitution in their opposition brief.

On September 5, 2019, this case was transferred to this Court.  On December 20, 2019, the Court denied the Nova Defendants' motion to dismiss, without addressing the substitution of the named plaintiff.

On April 9, 2021, Deutner, ITENT, and Miles moved to certify the class.  Thereafter, before the Court ruled on the motion to certify, the parties reached a

class-wide settlement and entered into a settlement agreement ["the Settlement Agreement"]. The Settlement Agreement calls for a gross settlement amount of $750,000.00, subject to deductions for: (1) An unspecified amount of taxes and tax costs; (2) Up to $150,000.00 for administrative settlement costs, including $100,000.00 before the settlement's effective date, and $50,000.00 after the effective date; (3) Up to $187,500.00 for attorneys' fees and $90,000.00 for litigation expenses; and (4) $10,500.00 for incentive awards – $3,500.00 each for Deutner, ITENT, and Miles. After the proposed deductions, the net amount payable to the class will be only $312,000.00 – approximately 42% of the gross settlement amount.

Deutner, ITENT, and Miles, now, move for conditional class certification and preliminary approval of the class settlement.

**Authorized Class Representative**

Deutner and ITENT substituted Miles for Barney in the FAC without explanation, mention, or leave of Court.

The substitution or addition of a named representative is subject to the Court's discretion. *See Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261, 1266 (9th Cir. 2017); Fed. R. Civ. P. 21. Prior to class certification, courts, generally, do not permit the substitution of the named plaintiff. *See*, *e.g.*, *De La Cueva v. Alta Dena Certified Dairy, LLC*, No. CV 12-1804 GHK, 2013 WL 12129947 at *3 (C.D. Cal. May, 9 2013). Pre-certification substitution of the named plaintiff is, generally, viewed as a "back-door attempt to begin the action anew" where, in all likelihood, "the original plaintiffs were never qualified to represent the class." *See Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973).

However, pre-certification substitution of the named plaintiff has been allowed when the named plaintiff's claims remain pending and viable, the request to withdraw is for personal reasons, the original named plaintiff intends to remain a class member, and there is an adequate proposed substitute named plaintiff available. *See*, *e.g.*, *Aguilar v. Boulder Brands, Inc.*, No. CV 12-01862 BTM, 2014 WL 4352169 at *8-9

(S.D. Cal. Sept. 2, 2014). In *Aguilar*, the Southern District of California distinguished its allowance of pre-certification substitution from another case, *Hitt v. Arizona Beverage Co., LLC*, No. CV 08-809 WQH, 2009 WL 4261192 at *2 (S.D. Cal. Nov. 24, 2009), where substitution was denied because the named plaintiff did not express a desire to remain a class member or to otherwise maintain her claims against the defendants. *See Aguilar*, 2014 WL 4352169 at *9.

Here, the record is devoid of any information as to whether it was, indeed, Barney's decision to withdraw from this case, the reason for Barney's substitution, and whether Barney intends to remain a class member. Consequently, because the substitution of Miles for Barney was never approved by the Court, Miles lacks any authority to act on behalf of the putative class.

Thus, the question, now, is whether Deutner and ITENT, as the lead plaintiffs, may move, alone, for conditional class certification and preliminary approval of the class settlement on behalf of the putative class in the absence of a legitimate named class representative?

In securities class actions, the role of the lead plaintiff is distinct from the role of the named plaintiff, though their duties can overlap. *See McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 693-97 (W.D. Wash. 2010). The primary role of the lead plaintiff is to ensure that the class of investors maintain primary control over private securities litigation, rather than allowing the lawyers to drive the litigation. *See* S. Rep. No. 104-98, at 4 (1995); *In re Cendant Corp.*, 260 F.3d 183, 197 (3d Cir. 2001). While both the named and lead plaintiffs must each satisfy the typicality and adequacy of representation requirements of Fed. R. Civ. P. 23, the lead plaintiff must also, satisfy PSLRA requirements. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004).

Securities class actions are, generally, filed by the named plaintiff, with the lead plaintiff being appointed later by the Court based on financial losses. 15 U.S.C. § 78u-4-(a)(3)(B). Once appointed, the lead plaintiff becomes empowered to speak for

the entire class.  *See In re Cendant Corp.*, 404 F.3d at 203.  In addition to nominating the lead counsel to represent the putative class, the lead plaintiff is a fiduciary who must "monitor, manage, and control the litigation," which includes the making of decisions regarding, *inter alia*, resource allocation and settlements.  *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020, 1032 (N.D. Cal. 1999).

After the lead plaintiff is appointed, the role of the named plaintiff is, generally, limited to assisting the lead plaintiff in representing the putative class.  *See*, *e.g.*, *McGuire*, 267 F.R.D at 692-93; *see also Hevesi*, 366 F.3d at 83.

In some cases, the named and lead plaintiffs, collectively, moved for class certification.  *See*, *e.g.*, *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 631-32 (C.D. Cal. 2009); *see also McGuire*, 267 F.R.D. at 692.  But, in other cases, the lead plaintiff, alone, has sought class certification.  *See*, *e.g.*, *In re Cendant Corp.*, 260 F.3d at 225-26; *see also In re Lending Club Secs. Litig.*, 282 F. Supp. 3d 1171, 1175 (N.D. Cal. 2017).  Moreover, in some cases, the lead plaintiff, alone, has moved for preliminary approval of a class settlement.  *See*, *e.g.*, *In re Cadence Design Sys., Inc. Sec. Litig.*, No. 08-4966 SC, 2011 WL 13156644 (N.D. Cal. Aug. 26, 2011).

Therefore, Deutner and ITENT, as lead plaintiffs, are empowered to bring the instant motion without the joinder of the named plaintiff.

**Conditional Class Certification**

To conditionally certify this class action, Deutner and ITENT bear the burden of establishing all four threshold requirements of Fed. R. Civ. P. 23(a): (1) Numerosity of proposed class members; (2) Commonality of issues of fact and law; (3) Typicality of the named representatives' claims; and (4) Adequacy of the named representatives and class counsel to fairly and adequately pursue the action.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).  They, also, bear the burden of establishing at least one of the requirements of Fed. R. Civ. P. 23(b).  *See Rodriguez*, 591 F.3d at 1122.  Here, Deutner and ITENT seek to certify the class pursuant to Fed. R. Civ. P. 23(b)(3), which requires a showing that common questions predominate over

individualized issues and that class adjudication is superior to other available methods.

Numerosity is established when the class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). While the FAC alleged that there are hundreds to thousands of putative class members, Deutner and ITENT failed to present any evidence, here, to substantiate that estimate. Consequently, numerosity has not been established.

A class has sufficient commonality "if there are questions of fact and law which are common to the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). This case is premised on one common question: Whether Nova's alleged misrepresentations artificially inflated the market price of its common stock during the class period, thereby harming each of the class members. Thus, commonality has been established.

Typicality is satisfied if the class representatives have the same or similar injury as the class, have been injured by the same course of conduct as other class members, and the action is based on conduct not unique to the representative parties. *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022). Here, Deutner and ITENT provided evidence that they purchased Nova common stock during the class period. Accordingly, their claims are reasonably co-extensive with those of the absent class members. *See Rodriguez*, 591 F.3d at 1124. Thus, typicality has been established.

Adequacy of representation is established when the representative parties and their counsel are free of conflicts of interest and are able to vigorously prosecute the class claims. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). There is no indication that Deutner or ITENT have any conflicts. However, while Rosen Law is an experienced securities class action firm, it is not clear whether the firm is fairly representing the putative class, here, considering the significant, but unsubstantiated, litigation and administrative costs that have been requested, especially in light of the relatively small gross settlement amount. *See Briseño v. Henderson*, 998

F.3d 1014, 1022-23 (9th Cir. 2021).  Consequently, adequacy of class counsel has not been established.

Under Fed. R. Civ. P. 23(b)(3), questions of law or fact common to the class must predominate over individualized issues, and a class action must be superior to other available methods for fairly and efficiently adjudicating the controversy.  Here, Deutner and ITENT alleged that Nova defrauded each of the putative class members with the same misrepresentations.  Thus, common issues predominate.  Further, because the costs of individual litigation for non-majority shareholders would likely dwarf their potential recovery, and their individual claims would unnecessarily burden the judiciary, class action is likely the superior method of resolving the class members' claims.  *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).  However, because Deutner and ITENT failed to provide the Court with even an approximation of the number of putative class members, the Court cannot determine whether a class action is, indeed, the superior method for fairly and efficiently adjudicating this controversy.

Because Deutner and ITENT failed to establish numerosity, adequacy of representation, and that a class action is the superior method for fairly and efficiently adjudicating this controversy, the Court will not conditionally certify this putative class action.

**Preliminary Approval of the Settlement**

When considering whether to preliminarily approve a class settlement, the Court must determine whether the settlement is fundamentally fair, adequate, and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "[W]here, as here, class counsel negotiates a settlement agreement before the class is even certified, courts must be particularly vigilant ... for ... subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Further, the Court must weigh several factors, including the effectiveness of the claims

processing method, as well as "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *see also* Fed. R. Civ. P. 23(e)(2).

The gross amount of the proposed settlement is $750,000.00.   Deutner and ITENT argued that the parties participated in a virtual mediation with an experienced mediator, who issued a mediator's proposal that both parties accepted.  The Court must "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also* Fed. R. Civ. P. 23(e)(2)(B).  Further, Deutner and ITENT argued that lead counsel's view of the risk, expense, complexity, and likely duration of this case is reflected in the proposed gross settlement amount.  The gross settlement amount is approximately 16.3% of the maximum recoverable damages, calculated by lead counsel to be $4.6 million.  Further, Deutner's and ITENT's damages expert opined that a settlement of approximately 16% is appropriate for this case.  A settlement that is but a small fraction of the maximum potential recovery may, indeed, be fair and adequate where there are difficulties in continuing litigation and proving the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Nevertheless, Deutner and ITENT failed to provide the Court with sufficient evidence to adequately evaluate the risk, expense, complexity, and likely duration of this case if it is not settled.  Deutner and ITENT argued that, based on Nova's most recent Form 10-Q, Nova does not have material assets in the United States.  The Form 10-Q is a form that public companies, such as Nova, must file quarterly with the SEC to disclose financial information.  17 CFR 240.15d-13.  Apparently, Nova's Form 10-Q disclosed that most of its assets and its executive officers are in Asia.  However,

Deutner and ITENT failed to provide a copy of Nova's Form 10-Q for the Court's review.   Moreover, Deutner and ITENT did not indicate whether they have independently corroborated evidence, other than Nova's own statements in its Form 10-Q, to substantiate their conclusion that Nova does not have material assets in the United States.

According to Deutner and ITENT, discovery has not been completed, but that does not, necessarily, present a problem.   "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982)).

Moreover, a settlement following sufficient discovery and genuine, arms-length negotiation is presumed to be fair.   *See*, *e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).   Here, Rosen Law asserted that it reviewed Nova's SEC filings, public financial reports regarding Nova's allegedly inflated revenues, and Nova's public statements made during the relevant period, and that it retained a Chinese investigator who investigated Nova's operations in China. With that information and the investigation results, and aided by their damages expert, Deutner, ITENT, and Rosen Law had sufficient information to participate in an arms-length mediation and negotiate the settlement.   Therefore, the extent of discovery and the stage of the proceedings weigh in favor of approval.

Deutner and ITENT selected Rosen Law to be lead counsel.   Rosen Law has extensive experience in securities class actions, as Judge Birotte acknowledged in his order appointing Rosen Law as lead counsel.

The Court must weigh the risk of continued litigation against the immediacy and certainty of the proposed settlement.   *See In re Mego*, 213 F.3d at 458.   Deutner and ITENT argued that the enforcement abroad of any potential judgment, here, would be both difficult and uncertain.   However, they cited to no authority to support that

argument.  Deutner and ITENT, also, argued that Nova's insurance carrier is paying its defense costs, and that the remaining available insurance funds will be depleted by any further litigation.  However, Deutner and ITENT provided no evidence regarding the limits of Nova's insurance coverage, the costs that Nova has incurred to date, or whether Nova's insurance policy includes separate coverage limits for defense and indemnity.  Without additional information regarding insurance coverage, the Court cannot adequately weigh the risks of continued litigation against the immediacy and certainty of the proposed settlement.

The $187,000.00 requested for attorneys' fees, based on 25% of the gross settlement amount, is reasonable and consistent with the Ninth Circuit's benchmark for reasonable class action contingency awards.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989); Fed. R. Civ. P. 23(e)(2)(C)(iii).  However, Deutner and ITENT failed to substantiate their requested litigation expenses of $90,000.00 and their requested administrative costs of $150,000.00.  Those high expenses and costs are, very likely, not reasonable.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Incentive awards are permitted if they are reasonable.  *Staton*, 327 F.3d at 976, 977.  Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez*, 563 F.3d at 958-59.  Deutner and ITENT failed to provide any evidence for the Court to evaluate their requested incentive awards, such as the actions they took to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort they expended to prosecute this case on behalf of the class.  *See Staton*, 327 F.3d at 977.  Further, Miles is not entitled to an incentive award because he was never a legitimate named plaintiff.

As to the remaining *Staton* factors, this case does not involve any governmental agencies, and there is no indication, at this point, that any putative class member

objects to the settlement.

Next, the Court must consider the effectiveness of the proposed method of distribution to the class. Fed. R. Civ. P. 23(e)(2)(C)(ii). The claims processing method must facilitate the filing of legitimate claims by class members, defeat unjustified claims, and not be unduly demanding. Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. The proposed claim form requires claimants to submit personally identifying information along with documentation of any purchase, sale, and/or holding of Nova common stock during the class period. Requiring class members to download, complete, and submit a claim form is reasonable. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. ML 10-2151 JVS, 2013 WL 3224585, at *18 (C.D. Cal June 17, 2013).

Deutner and ITENT proposed that, for each approved claim, the net settlement fund will be allocated based on the number of submitted claims and the stock value that each claimant lost for transactions that occurred between December 20, 2018, and March 20, 2019, for shares purchased between December 3, 2015, and December 20, 2018. If there are adequate net settlement funds, each approved claimant will receive their total recognized loss. However, if there are not adequate net settlement funds, the approved claims will be paid on a *pro rata* basis based on each claimant's recognized loss. If any money remains in the net settlement fund six months after the initial distribution, it will be distributed in the following order: (1) Payment of any claims mistakenly missed; (2) Payment of any additional administrative costs; and (3) A second distribution to approved claimants who cashed their initial distribution checks and who would receive at least $10.00, on a *pro rata* basis, from the second distribution. Finally, if any funds remain after the second distribution, the Settlement Agreement provides for Rosen Law to donate those remaining funds to a charitable organization of its choice. However, the Court will select the charitable organization. Otherwise, the proposed method of distribution is adequate, thorough, and effective, and not unduly demanding for class members. *See* Fed. R. Civ. P. 23(e), 2018

Advisory Committee Notes.

Until Deutner and ITENT establish the reasonableness of their requested litigation fees, administrative costs, and incentive awards, and substantiate the potential risks in continuing to litigate this case, the Court cannot properly determine whether the proposed settlement is fair, adequate, and reasonable. *See City of Seattle*, 955 F.2d at 1276.

**Proposed Class Notice**

Pursuant to Fed. R. Civ. P. 23(e)(1), Deutner and ITENT must give notice to the putative class members of the proposed settlement that generally describes the terms of the settlement in sufficient detail to alert those members with adverse viewpoints to investigate and object. *See Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Fed. R. Civ. P. 23(e)(1)(A) requires that the notice be provided to class members in a manner approved by the Court.

Here, the notice proposal calls for: (1) Identifying class members using reasonable efforts; (2) Emailing to class members an internet link which will provide access to the settlement notice and a claim form, or, if no email address is available, the mailing of a postcard to class members; (3) The posting of the notice, claim form, and Settlement Agreement on a website maintained by the claims administrator; (4) The mailing of copies of the settlement notice and/or claim form to class members upon request; and (5) The publishing of a summary notice over the *GlobeNewswire* and in print in *Investor's Business Daily*. Class members who choose to be excluded from the settlement must submit a request by first class mail to the claims administrator, so that it is received no later than 21 calendar days before the hearing on the motion for final approval of the settlement.

The proposed notice lists the proposed attorneys' fees, litigation expenses, and incentive award amounts, but is silent as to the administrative costs that could be as much as $150,000.00. Given the unusually high proposed fees and costs in relation to the gross settlement amount, here, the notice plan will not adequately inform the

putative class members of the details of the proposed expenses.  *See Churchill*, 361
F.3d at 575.


        Accordingly,


        It is Ordered that the motion for class certification and preliminary approval
of the class settlement be, and hereby is, Denied.


Date: August 29, 2022

Terry J. Hatter, Jr.
Senior United States District Judge